*Fee Paid
#4
8011
no related*

SHANE CHESHER
Natrona Heights, Pennsylvania
Chesher2305@gmail.com
Individual Sui Juris

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANE CHESHER, JOANNE M. KING
ANDREW NOSBISCH, JULIA L. WILNER
THOMAS KOERBEL, CAROL WALSH
DALLAS CHRESTLER, DEBRA SPIRKO
JEFFREY SIMONETTI, KAREN M. DEPKON
TRACY MacALLISTER, STACY POOLE
CANDIS SINES-WESTERBERG

            PLAINTIFFS,

   vs.

ALLEGHENY COUNTY
RICH FITZGERALD
LAURA ZASPEL
JAMIE REGAN
CHRISTOPHER CAVENDISH
NICHOLE NAGLE
ELLEN BUANNIC
WILLIAM D. McKAIN
STEPHEN PILARSKI
PATRICK DOWD

DOES 1-50

            DEFENDANTS,

No. 2-22-cv-1822

**COMPLAINT FOR DAMAGES
CIVIL RIGHTS VIOLATIONS UNDER 42
U.S.C. SECTION 1983, 1985**

**COMPENSATORY DAMAGES**

# FILED

## DEC 16 2022

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## I. INTRODUCTION

**1.** All ALLEGHENY COUNTY employees were informed through human resource officials, and other county supervisory leadership, primarily FITZGERALD that PLAINTIFFS' employment would be terminated if they did not receive the COVID-19 injections by December 1, 2021.

**2.** Previously un-injected employees and PLAINTIFFS were required to receive mandatory testing in common areas and parking lots in which other employees who complied with the

injection would walk by them on their way in to work, in void of medical privacy for PLAINTIFFS and other employees.

**3.** COUNTY and other DEFENDANTS did willfully and knowingly subject PLAINTIFFS into disclosing their private medical and religious choices, to not take the injection, because COUNTY required PLAINTIFFS to openly test publicly and in front of a multitude of people, this caused humiliation and extreme emotional distress, creating two distinct classes of employees.

**4.** Further, un-injected employees and PLAINTIFFS were also required to wear face coverings. This created a clearly differentiated two classes of employees. (**See Exhibit A** – Door sign of new policy posted on several COUNTY doors).

**5.** The new county policy enforcing these actions not only disclosed PLAINTIFFS medical privacy but was discriminatory, divisive, willful, and deliberately indifferent toward PLAINTIFFS. Further, this operation also was an invasion of medical privacy decisions and revealed this to a multitude of people who are NOT required by HIPPA to conceal private information.

**6.** ALLEGHENY COUNTY leadership's behavior, action, and unconscionable process exercised by DEFENDANTS did cause public humiliation and degradation to PLAINTIFFS who were hailed as heroes and frontline essential workers before the unlawful and constitutionally defective mandates in the adopted policies of ALLEGHENY COUNTY.

**7.** Moreover, PLAINTIFFS' personal sacrifice to work through the health emergency, which included contracting COVID-19 for some, and to be denied religious and medical exemptions, in addition to not taking in account the natural immunity that PLAINTIFFS had by contracting COVID-19, was very disheartening.

**8.** This distress, discomfort, public shaming, loss of worth, and defamation, caused by the COUNTY and multiple actors, has caused personal anguish to the PLAINTIFFS and their families for multiple reasons stated in PLAINTIFFS affidavits. (**See Exhibit B**).

**9.** Multiple COUNTY employees, including some PLAINTIFFS, were forced to retire early and diminish their pensions, while other PLAINTIFFS were deprived a paycheck and health insurance in order to exercise constitutionally protected conduct by not receiving the

experimental emergency approved injection.

**10.** PLAINTIFFS were shocked in the deepest part of their emotions because of the extreme actions by ALLEGHENY COUNTY to discriminate against PLAINTIFFS' religious beliefs, medical advice of PLAINTIFFS' physicians, including firing PLAINTIFFS who were exercising personal liberty of conscience.

**11.** PLAINTIFFS believe that the coronavirus survival rate, close to 99%, does not invalidate cancel or revoke the **Constitution for the Commonwealth of Pennsylvania**, the **United States Constitution**, the **Nuremberg Code,** and **Masons Manual of Legislative Procedures** governing clearly established law.

**12.** The above-mentioned pillars of supreme authority do not permit public officials to go beyond their scope of authority infringing upon secured Rights.

**13.** Additionally, COUNTY and a multitude of actors who worked in concert together against PLAINTIFFS did willfully and deliberately deny religious and medical exemptions of PLAINTIFFS denying constitutionally protected Rights, in addition to violating procedural and substantive due process Rights pursuant to the **Fourteenth Amendment**, Equal Protections Under the Law, including **First Amendment,** free exercise claim, at Minimum.

## II. JURISDICTION AND VENUE

14. The Jurisdiction of this Court is in the nature of federal question **28 U.S.C. 1331**.

15. This Court has further jurisdiction under **42 U.S.C. 1983, 1985**; and the First and Fourteenth Amendments to the **United States Constitution**, further **28 U.S.C. Sections 1343 (Civil Rights)**, **1331, and 2201-02 (Declaratory relief).**

16. Additionally, supplemental jurisdiction exists with this court under the provisions of **28 U.S.C. Section 1367(a)** as to the remaining counts arising under the of the Commonwealth of Pennsylvania and State Laws from the same set of operative facts.

17. The operative facts contained herein caused this claim to arise under the provisions of the **United States Constitution**. In Addition to **Constitution of the Commonwealth of**

**Pennsylvania, Article 1, Sections 3 and 4.**

18. Venue is proper because all events giving rise to this complaint occurred within this district as provided in **28 U.S.C. Section 1391(b)**.

### III. PARTIES

19. PLAINTIFF, SHANE CHESHER, a man, an individual, hereinafter referred to as CHESHER, domiciles in Western Pennsylvania, and was a former employee of ALLEGHENY COUNTY for 11 years, at all times relevant.

20. PLAINTIFF, JOANNE M. KING, a woman, an individual, hereinafter referred to as KING, domiciles in Western Pennsylvania, and was a former employee of ALLEGHENY COUNTY of 32 years, at all times relevant.

21. PLAINTIFF, ANDREW NOSBISCH, a man, an individual, hereinafter referred to as NOSBISCH, domiciles in Western Pennsylvania, and was a former employee of ALLEGHENY COUNTY of almost two years, at all times relevant.

22. PLAINTIFF, JULIA L. WILNER, a woman, an individual, hereinafter referred to as WILNER, domiciles in Western Pennsylvania, and was a former employee of ALLEGHENY COUNTY of 1 year 9 months, at all times relevant.

23. PLAINTIFF, THOMAS KOERBEL, a man, an individual, hereinafter referred to as KOERBEL, domiciles in Western Pennsylvania, and was a former employee of ALLEGHENY COUNTY of 10 years, at all times relevant.

24. PLAINTIFF, CAROL WALSH, a woman, an individual, hereinafter referred to as WALSH, domiciles in Western Pennsylvania, and was a former employee of ALLEGHENY COUNTY of 22 years, at all times relevant.

25. PLAINTIFF, DALLAS CHRESTLER, a man, an individual, hereinafter referred to as

CHRESTLER, domiciles in Western Pennsylvania, and was a former employee of

ALLEGHENY COUNTY of 6-1/2 years, at all times relevant.

**26.** PLAINTIFF, DEBRA SPIRKO, a woman, an individual, hereinafter referred to as

SPIRKO, domiciles in Western Pennsylvania, and was a former employee of ALLEGHENY

COUNTY of 5 years, at all times relevant.

**27.** PLAINTIFF, JEFFREY SIMONETTI, a man, an individual, hereinafter referred to as

SIMONETTI, domiciles in Western Pennsylvania, and was a former employee of

ALLEGHENY COUNTY of 1-1/2 years, at all times relevant.

**28.** PLAINTIFF, KAREN M. DEPKON, a woman, an individual, hereinafter referred to as

DEPKON, domiciles in Western Pennsylvania, and was a former employee of

ALLEGHENY COUNTY of 4 years, at all times relevant.

**29.** PLAINTIFF, TRACY MacALLISTER, a woman, an individual, hereinafter referred to as

MacALLISTER, domiciles in Western Pennsylvania, and was a former employee of

ALLEGHENY COUNTY of 3 years 9 months, at all times relevant.

**30.** PLAINTIFF, STACY POOLE, a woman, an individual, hereinafter referred to as

POOLE, domiciles in Western Pennsylvania, and was a former employee of ALLEGHENY

COUNTY of 23 years, at all times relevant.

**31.** PLAINTIFF, CANDIS SINES-WESTERBERG, a woman, an individual, hereinafter

referred to as WESTERBERG, domiciles in Western Pennsylvania, and was a former

employee of ALLEGHENY COUNTY of 31 years, at all times relevant.

**32.** DEFENDANT, ALLEGHENY COUNTY, hereinafter referred to as COUNTY , and is a

political subdivision in Western Pennsylvania. COUNTY is being sued as a person,

according to statutory provisions.

**33.** DEFENDANT, RICH FITZGERALD, hereinafter referred to as FITZGERALD, is the

county executive of ALLEGHENY COUNTY. FITZGERALD is rewarded, compensated and enriched by COUNTY and is being sued both in his official job capacity, and in his individual capacity.

**34.** DEFENDANT, LAURA ZASPEL, hereinafter referred to as ZASPEL, is the human resources director of ALLEGHENY COUNTY. ZASPEL, is rewarded, compensated and enriched for her position, and is being sued both in her official job capacity, and in her individual capacity.

**35.** DEFENDANT, CHRISTOPHER CAVENDISH, hereinafter referred to as CAVENDISH, is a human resource manager of ALLEGHENY COUNTY. CAVENDISH, is rewarded, compensated and enriched for his position, and is being sued both in his official job capacity, and in his individual capacity.

**36.** DEFENDANT, NICHOLE NAGLE, hereinafter referred to as NAGLE, is the employee relations manager of ALLEGHENY COUNTY, is rewarded, compensated and enriched for her position, and NAGLE is being sued both in her official job capacity, and in her individual capacity.

**37.** DEFENDANT, ELLEN BUANNIC, hereinafter referred to as BUANNIC, is the employee relations coordinator for human resources of ALLEGHENY COUNTY. BUANNIC is rewarded, compensated and enriched for her position, is being sued both in her official job capacity, and in her individual capacity.

**38.** DEFENDANT, JAMIE REGAN, hereinafter referred to as REGAN, is the deputy director for human resources of ALLEGHENY COUNTY. REGAN is rewarded, compensated and enriched for his position, and is being sued both in his official job capacity, and in his individual capacity.

**39.** DEFENDANT, WILLIAM D. McKAIN, hereinafter referred to as McKAIN, is the county

manager of ALLEGHENY COUNTY. McKAIN is rewarded, compensated and enriched for

his position, and is being sued both in his official job capacity, and in his individual capacity.

**40.** DEFENDANT, STEPHEN PILARSKI, hereinafter referred to as PILARSKI, is the senior

deputy county manager of ALLEGHENY COUNTY. PILARSKI is rewarded, compensated

and enriched for his position, and is being sued both in his official job capacity, and in his

individual capacity.

**41.** DEFENDANT, PATRICK DOWD, hereinafter referred to as DOWD, is the chief

operating officer of the Pennsylvania Department of Health of ALLEGHENY COUNTY.

DOWD is rewarded, compensated and enriched for his position, and is being sued both in his

official job capacity, and in his individual capacity.

## IV. FACTUAL ALLEGATIONS

**42**. All policy creation objectives and enforcement are endorsed, supported, and set forth by

FITZGERALD, COUNTY executive. (COUNTY Employee Handbook Section II A).

**43.** The creation of COUNTY'S policy changes, including mandatory injection of COVID-

19 emergency authorized medical treatment, reclassification of employees, unequal pay

incentives, exposure of medical privacy, all at minimum, were implemented by PILARSKI,

MCKAIN, and other county leadership actors working in concert together over a period of

several months between December 2020 to September 2021.

**44.** All PLAINTIFFS were never notified or consented to any forms of vaccination, injection,

and new forms of medical treatments as a term or condition to commencing employment.

**45.** All PLAINTIFFS have never knowingly or willingly waived constitutionally protected

Rights as a condition of employment.

**46.** PLAINTIFFS contend and claim that FITZGERALD acted under Color of Law when

creating his prejudicial and unconstitutional mandate on injection or get fired and did so in

concert with other actors.

**47.** FITZGERALD made the following public comments concerning the COUNTY mandate such as:

**a)** " Folks who are not vaccinated are going to be isolated from society."

**b)** "It becomes very difficult for the unvaccinated to really get full employment and quite frankly function and what's happening in society right now."

**c)** "Week after week, we'll see how safe they are, how effective they are, and how dangerous it is not to be vaccinated."

**d)** "These vaccine cards are something people are going to be showing a lot of. "

**e)** "However long you are working at your place of employment, to know that the folks that are coming in contact with are vaccinated. So, you know you're not going to be taking that illness back to your family or getting yourself sick."

**f)** "We feel very comfortable that this can be a condition of employment""…"and obvious this can go to court."

**48.** FITZGERALD knowingly and willingly elaborated his position publicly concerning the mandates and policy changes that he and his team put in place.

**49.** PLAINTIFFS claim and contend that FITZGERALD was implementing his personal views which were biased, prejudicial, and unconstitutional against PLAINTIFFS, eventually forcing PLAINTIFFS to be terminated.

**50.** "For out of the abundance of the heart the mouth speaks." (LUKE 6:45 KJV).

FITZGERALD was speaking for himself and for the county during the statements released.

**51.** PLAINTIFFS claim and contend that by refusing the emergency approved injection, they were acting with constitutionally protected conduct personally and professionally.

**52.** PLAINTIFF'S claim and contend they submitted religious exemption testimonies in addition to medical exemptions.

**53.** Some of the medical and religious documents sent to COUNTY Human Resource workers were accompanied by supporting pastoral's validation or a physician's declaration.

**54.** PLAINTIFFS' testimony/exemption/declarations were all arbitrarily, capriciously, and

unlawfully denied by DEFENDANTS and COUNTY officials.

55. COUNTY and DEFENDANTS postured their unlawful position using legalese such as insubordination, disqualification in place of what was an unlawful termination and firing of PLAINTIFFS.

56. DEFENDANTS cannot deflect the blatant violation of equal protection under the law and religious discrimination in such articulation as "undue hardship," and "unable to accommodate."

57. Truth be told, PLAINTIFFS were fired and terminated because of their deeply held religious views/conscience, violating **First Amendment of the United States Constitution** and were not giving equal protection under the law pursuant to the **Fourteenth Amendment**.

58. DEFENDANTS COUNTY, FITZGERALD, PILARSKI, MCKAIN, NAGLE, ZASPEL, REGAN, CAVENDISH, BUANNIC, and DOWD, did knowingly and willfully work independently and in concert directly in the chain of command enforcing defective policy practices and acting under Color Of Law, violated PLAINTIFFS constitutionally protected and rights in the following manner.

**a)** Creation and formation of illegal and unlawful policy violating rights of PLAINTIFFS leading to termination.

**b)** Implementing and enforcing unlawful policy and the denial of deeply held religious values and medical declarations from doctors.

**c)** Discriminating and terminating employment of PLAINTIFFS and working together in concert to terminate PLAINTIFFS' employment for constitutionally protected conduct.

**d)** Denying religious, medical, and privacy rights of PLAINTIFFS, and carrying out unlawful orders, assisting others county actors, denying those rights by creating a developed script which is an improper guidance document.

**e)** Assisting other COUNTY actors in denying those Rights by creating a developed script, which is an improper guidance document, used to deprive PLAINTIFFS' exemptions.

59. COUNTY and DEFENDANTS were not transparent in the decision-making process. In

addition, having closed-door meetings concerning the allocation of COVID relief Federal Award that was given to COUNTY to mitigate the health emergency which is further bad faith actions by COUNTY violating PA Sunshine Act, and the public trust.

**60.** All Federal Awards to non-federal entities such as COUNTY are held to the strictest compliance scrutiny, and standards pursuant to internal control code **2CFR section 200.303.**

**61.** This code of federal regulation prohibits violations of the US Constitution, federal statutes, regulations, which would include **21 USC 360(b)(b)(b)** which reserves the [PLAINTIFFS'] Right to refuse an emergency authorized medical treatment.

**62.** COUNTY and DEFENDANTS should have used the Federal Award by allocating funding to "accommodate" faithful loyal employee such as PLAINTIFFS to employment reassignment instead of biased, prejudicial, and unlawfully terminate the PLAINTIFFS' employment.

**63.** Moreover, FITZGERALD has a sworn and subscribed oath of office to support and defend the **Constitution for the Commonwealth of Pennsylvania** and also the **US Constitution,** in which he failed to do so by enforcing the unlawful COUNTY mandates.

**64.** FITZGERALD'S oath is not to the CDC, or the FDA, or any other agency in the executive branch, but is a contract of public trust, liable to PLAINTIFFS.

**65.** FITZGERALD has a duty of care to not violate the rights of his subordinates or violate and ignore said **Constitutions, Masons' Manuals of Legislative Procedures,** and the **Nuremberg Code,** which prevents individuals outside of the legislative branch from acting like dictators and tyrants violating clearly established law.

**66.** All other DEFENDANTS knowingly and willingly worked in concert with FITZGERALD depriving PLAINTIFFS guaranteed secured and protected rights by their actions, omissions, and duty of care in their professional and private capacities.

**67.** PLAINTIFFS, CHESHER, KING, NOSBISCH, WILNER, KOERBEL, WALSH, CHRESTLER, SPIRKO, SIMONETTE, DEPKON, MacALLISTER, POOLE, and WESTERBERG, contend and claim that all DEFENDANTS acted with retaliatory animus

and deliberate indifference towards PLAINTIFFS' beliefs of being un-injected and
prejudiced against PLAINTIFFS personal religious, health convictions, and Rights, by their
coordinated efforts to unlawfully terminate PLAINTIFFS.

**68**. All PLAINTIFFS did act in good faith pursuant to their religious beliefs and medical
choices but were coerced, under fear of threat, to submit to the improper guidance
documents, and orders pertaining to the wearing of masks, and testing for COVID-19,
pursuant to COUNTY mandatory requirements. **(See Exhibit C** – Prohibition against
improper guidance documents).

**69**. All PLAINTIFFS were in good standing in their employment by being devoted,
dedicated workers, and had planned to retire from their employment at ALLEGHENY
COUNTY before the COVID-19 restrictions began. Subsequently PLAINTIFFS were fired
with no reciprocity, health insurance, and forced to get new occupations.

**70.** PLAINTIFFS, CHESHER, KING, NOSBISCH, WILNER, KOERBEL, WALSH,
CHRESTLER, SPIRKO, SIMONETTE, DEPKON, MacALLISTER, POOLE, and
WESTERBERG, have suffered a multitude of injuries, including financial, physically, and
emotionally, from being unlawfully fired which is detailed in PLAINTIFFS affidavits. **(See
again Exhibit B)**. One PLAINTIFF, SIMONETTE, suffered a heart attack, directly related to
the stress of a job loss.

**71.** PLAINTIFFS contend that the above-mentioned grievances have caused compounding
irreparable damage, undue stress, loss of worth, financial hardship, and physical illness.

## IMPROPER PROCEDURES, PRACTICES, AND POLICIES

**72.** ALLEGHENY COUNTY, elected officials, policy enforcers, administrators, and other
actors have a duty to uphold the laws of the Commonwealth of Pennsylvania, and of the
**United States Constitution**, and federal laws, to ensure fair and impartial administration
concerning the employment of individuals and secured rights thereof.

**73**. COUNTY further changed the terms of employment for employees, without providing reciprocity, equal consideration, or providing indemnification from any potential vaccine injuries, or death, by requiring the unlawful mandatory order to be injected with experimental treatment, or be fired.

**74.** PLAINTIFFS Unions did not hire PLAINTIFFS' but exercised their fiduciary duty to provide representation and failed. PLAINTIFFS have decided not to redress Unions at this time.

**75.** DEFENDANTS, in promulgating COUNTY'S regulations, rules, guidance, and orders to use mandatory language concerning the injection of an emergency-authorized medical treatment, was unconscionable and prohibited by the Departments of Justice "Prohibition against Improper Guidance Documents." **(See again Exhibit C)**. Further, under *21 USC Sec. 360bb,* the emergency authorization statute which provides the right to refuse the injection.

**76.** Additionally, COUNTY violated *Article 1 Sec. 12,* of the **Constitution of the Commonwealth of Pennsylvania**, by suspending all of the above-mentioned laws in the firing of PLAINTIFFS which is void of legislative authorities, and acting under The Color of Law.

**77.** DEFENDANT COUNTY has received over $100 million of allocated Federal Award by the federal government.

**78.** Moreover, COUNTY ignored further guidance in the *Pennsylvania Department of Community and Economic guidelines* for COVID-19 relief funds. *Sec. V, B* **(See Exhibit D)** in those guidelines, requires non-discrimination concerning religious creed.

**79.** Again, *Sec. IV, B,* **(See Exhibit E)**, compliance requirements pursuant to *CFR Sec. 200.303,* regarding **Internal Control** requires that COUNTY must – comply with the US Constitution, Federal Statutes (such as emergency use authorization), regulations, and terms and conditions of Federal Award.

**80.** The COVID relief funds require COUNTY to use the aid towards expenditures incurred due to the public health emergency.

**81.** PLAINTIFFS contend that this relief should have been entitled towards them in some or any aspect for re-assignment of duties instead of firing PLAINTIFFS. Many DEFENDANTS shortly thereafter the Federal Award, received hefty raises.

**82.** Nevertheless, COUNTY uniquely conjured up the undue hardship excuse in an attempt to "legally" terminate all PLAINTIFFS' employment for refusing the injection, thus be treated with contempt as second-class citizens.

**83.** FITZGERALD, PILARSKI, DEFENDANTS, and other COUNTY leadership, premeditatively developed a script to implement the unlawful denial of religious and medical exemptions.

**84.** This was done with deliberate indifference to PLAINTIFFS' First and Fourteenth Amendment protections.

**85.** DEFENDANTS used standard responses to deny exemptions and conspired in concert together at team meetings to propagate their untransparent, vague, and ambiguous reasons of undue hardship and exemption denial. Therefore, depriving all PLAINTIFFS of procedural due process Rights in void of any legal authority superseding the free exercise claim in the **First Amendment**.

**86.** Additionally, further violations by COUNTY in the creation of the Vaccine Incentive Program, discriminately granting monetary rewards and 80 hours of additional pay to a particular class of employees. This is a further violation to **2CFR 200.303(b)**, and an additional **Fourteenth Amendment** infringement.

**87.** In conclusion, for some PLAINTIFFS, their religious convictions forbid them from injecting aborted fetal lines into their bloodstream. These ingredients were in all of the three available injections for COVID-19.

**88.** Moreover, the CDC reclassified its definition of "Vaccine" because there was not informed consent previously about the injection being technically an M-RNA treatment.

**89**. KING, SPIRKO and SIMONETTI were denied medical exemptions in which would categorically put them at risk if irreparable health injury would occurred with no indemnification.

**90.** Either situation, COUNTY-mandated injections have created two classes of employees, vaccinated and unvaccinated. Therefore, denying equal protections and civil Rights to PLAINTIFFS.

**91.** Not even congress can create a law that prohibits the free exercise of one's religious practices, nor does the COUNTY, specifically, those in the executive branch, enforcing unlawful mandates, have legislative authority to do so.

**92.** COUNTY'S policies, practices, procedures, customs, and omissions thereof, have a direct link to the deprivation of all PLAINTIFFS fundamental Rights and liberties, in addition to actors and DEFENDANTS COUNTY, FITZGERALD, ZASPEL, REGAN, CAVENDISH, NAGLE, BUANNIC, McKAIN, PILARSKI, and DOWD, worked together in concert to do so.

**93.** Finally, PLAINTIFFS bring forth this Prima facia case to be granted relief for all claims of injury, harm, loss, and deprivation, within this unamended complaint, exhibits, and affidavits.

**94.** For all the above-mentioned reasons, all PLAINTIFFS are entitled to relief, and COUNTY'S policy is directly linked to violating clearly established law. Any claims of immunity are therefore void.

## V.   CLAIMS (COUNTS)

### COUNT I
**(Violation of First Amendment 42 USC Section 1983 Art. 1, Sec. 3, and 4 of PA Constitution)**

**95.** PLAINTIFFS incorporate all the previous paragraphs herein, all PLAINTIFFS contend, assert, and claim that DEFENDANTS, FITZGERALD, ZASPEL, REGAN, CAVENDISH, NAGLE, BUANNIC, McKAIN, PILARSKI, and DOWD, infringed upon PLAINTIFFS

constitutionally protected First Amendment Right of free exercise of Religion, in addition to protections guaranteed by **Article 1, Sections 3 and 4 of the Constitution for Commonwealth of Pennsylvania.**

**96.** All named DEFENDANTS in this count worked in concert together knowingly and willfully, with deliberate indifference, in violating PLAINTIFFS' guaranteed Rights, before, during and after the PLAINTIFFS communicated verbally, and through multiple emails concerning their faith, and submitted exemptions. WESTERBERG additionally communicated through her lawyer, concerning deeply held religious beliefs.

**97.** DEFENDANTS did interview and question all PLAINTIFFS and were also directly in the chain of command of the termination of all PLAINTIFFS.

**98.** PLAINTIFFS had a Right to refuse to violate their conscience and religious freedoms from consenting to an injection which contained aborted fetal cell lines within it, which therefore would have defiled and dishonored PLAINTIFFS' bodies which PLAINTIFFS declare, "The Temple of God", **First Corinthians 3:17.** *"Do you not know you are the Temple of God, and the Holy Spirit lives in You? If anyone destroys God's temple, God will destroy him, for God's temple is sacred, and You ARE the Temple."*

**99.** The aborted fetal line ingredients were inside of all 3 COVID-19 vaccines.

**100.** PLAINTIFFS have further religious Rights not to put foreign, unknown dangerous chemicals into their bloodstream which would further cause injury and defilement into God's Temple. **Leviticus Chapter 17.**

**101.** PLAINTIFFS were interrogated, intimidated and forced to divulge their deeply held religious views, under the scrutiny of DEFENDANTS who reasonably should have known that fundamental liberties of individuals, including employees, are protected by clearly established law. This includes PLAINTIFFS' personal religious beliefs.

**102.** Further, this deprivation and intrusion to PLAINTIFFS' beliefs, was intimidating, humiliating, embarrassing, stressful, and unconscionable by DEFENDANTS who dishonored PLAINTIFFS' constitutionally protected conduct.

**103.** Because DEFENDANTS knowingly and willfully participated in this deprivation, and worked in concert with other actors to terminate employment of PLAINTIFFS, the DEFENDANTS are the proximate cause of injury, harm, and loss in this claim.

## COUNT II

### (Violation of Fourteenth Amendment 42 USC Section 1983)

**104.** PLAINTIFFS incorporate all the previous paragraphs herein, all PLAINTIFFS, contend, assert, and claim that DEFENDANT COUNTY, did willfully, knowingly implement and enforce policies that divided and isolated all PLAINTIFFS into a subclass of people, depriving PLAINTIFFS equal protection under the law.

**105.** PLAINTIFFS contend and assert that COUNTY policy, procedure, custom, and practice, did knowingly prejudice and discriminate against PLAINTIFFS, who at all times relevant were acting in constitutionally protected conduct.

**106.** COUNTY did openly with indifference, deliberately separate PLAINTIFFS due to the influence of policymakers within COUNTY leadership ranks, unreasonably exercise political bias, personal prejudice, which are confirmed and directly linked to COUNTY policy concerning the "unvaccinated", specifically PLAINTIFFS.

**107.** These implemented policies of COUNTY were premeditated, and also through its supervisors, went to great lengths to give the illusions of fairness, due process, and equal protections under the law, but were clearly disingenuous because of vague and ambiguous exercises of requirements placed upon PLAINTIFFS.

**108.** COUNTY has had plenty of financial resources, in addition to multiple grants and relief monies to address the health emergency that COUNTY claimed undue hardship in order to

unlawfully separate and terminate PLAINTIFFS' status and standing as equally protected individuals.

**109.** Further, COUNTY, also, in their written material and handbook to employees, as demonstrated in the handbook that employees should have no expectation of their Right to privacy, **(See Section II-R, in COUNTY Employee handbook).**

**110.** This deliberate indifference was further demonstrated by COUNTY policy and practice as evidenced by COUNTY made a public display of PLAINTIFFS revealing their personal medical and religious decisions to refuse the emergency authorized injection, by subjecting them to COVID-19 testing in full view of the public and other employees.

**111.** Some of the times, this was done openly and often in an outdoor parking lot, exposing lack of medical privacy to individuals who are not subject to HIPPA violations and could disclose PLAINTIFFS' private medical decisions without PLAINTIFFS' permission.

**112.** Further, COUNTY created policy such as vaccine incentive programs which discriminated against and prejudiced PLAINTIFFS from participating in extra benefits given to another class of employees.

**113.** These benefits were financial, and beneficial with extra paid time off work, in which the federal funding given as relief to COUNTY did prohibit discrimination, and dissemination concerning the allocations of such funding. 2 **CFR Section 200.303.**

**114.** Moreover, further protections under the law pursuant to **21 USC 360bbb**, provide individuals a Right to refuse the (vaccine), and PLAINTIFFS should not have been punished, prejudiced, classified, and terminated because of their lawful choices to deny an emergency authorized medical treatment. These federal provisions are strictly applied to this instant matter because COUNTY received federal funding to deal with the health emergency.

**115.** PLAINTIFFS had a Right to not be segregated with an unconstitutional policy and should have been given reasonable accommodations due to the fact of the extra federal funding and clearly established law that prohibits COUNTY from creating a policy that directly does not provide equal protections under the law.

**116.** Many other jurisdictions throughout Pennsylvania did not require civil servant mandatory vaccination, under fear of threat of termination. COUNTY is the proximate cause of injury in this count.

## COUNT III
### (Breach of Contract - COUNTY)

**117.** PLAINTIFFS contend and assert a claim that COUNTY did breach employment contract between PLAINTIFFS and Allegheny County for the following reasons:

**a.** COUNTY clearly had no requirements or pre-requisite of any of the PLAINTIFFS to be vaccinated by an emergency authorized experimental injection previously to being hired.

**b.** COUNTY changed the terms of employment with PLAINTIFFS without reasonable ability to negotiate or have any type of reciprocity allowing equal considerations for both parties.

**c.** The fact that union representatives were unable to negotiate new terms does not negate the fact that County brought no reciprocity or fair dealings to the table. COUNTY did not operate with fairness to their vague and ambiguous procedure to allow retention of employment.

**d.** County operated in secret to determine whether medical or religious exemptions would be sufficient in order to retain employment.

**118.** COUNTY did willingly and knowingly terminate PLAINTIFFS without PLAINTIFFS failing in their obligations to the original terms of employment contract.

**119.** PLAINTIFFS suffered financial injury due to the breach of contract because their employment was abruptly terminated.

**120.** COUNTY is the proximate cause of injury in this count depriving PLAINTIFFS' beneficiary status in void of a conscionable and equal consideration contract.

## COUNT IV

**(Violation of Article 1 Sec. 12 of Constitution of The Commonwealth of PA; Violation of Title 21 of the US code and Code of Federal Regulations 2CFR 200.303)**

**121.** PLAINTIFFS contend assert and claim the COUNTY willingly and knowingly violated **Constitution for the Commonwealth of Pennsylvania Article 1 Section 12,** by suspending mandatory federal requirements under **Title 21 of the United States code,** in addition to federal codes of regulation.

**122.** PLAINTIFFS contend, assert, and claim that COUNTY violated **21 USC Section 360 bbb (e) (1) (A) (ii) (iii)**, which clearly defines that PLAINTIFFS had a Right to refuse the emergency authorized medical injection that COUNTY was requiring for the changing of the terms of PLAINTIFFS employment.

**123.** Moreover, the federal award, which is directly accountable to the Office of Inspector General of the United States, requires strict adherence concerning internal controls. The conditions of receiving the federal award, specifically, the Cares Relief Fund monies that total $212 million, require compliance and guidance that follow federal statutes, regulations in addition to the United States Constitution.  These terms were clearly violated in **Sections (a) (b) and (c) of 2 CFR 200.303,** and should be audited by the OIG if not corrected immediately.

**124.** COUNTY and other actors have a duty of care to follow requirements of the funding that they received from the federal government. COUNTY was negligent to do so, and this caused PLAINTIFFS to be fired because COUNTY and DEFENDANTS neglected, ignored, and violated the terms of the federal award by termination of PLAINTIFFS employment

under the guise of the health emergency for which they received millions of dollars in funding to mitigate.

**125.** COUNTY caused injury, harm, and loss to PLAINTIFFS by suspending and ignoring these mandatory laws mentioned in this count, and is the proximate cause of injury.

## COUNT V

### (Intentional Inflectional Emotional Distress)

**126.** PLAINTIFFS contend and claim COUNTY actors, including DEFENDANTS, did willfully and intentionally inflict emotional distress upon PLAINTIFFS.

PLAINTIFFS were subjected to being treated like second class citizens, pertaining to the treatment that they endured and still do to this day.

**127.** With all disregards to common decency PLAINTIFFS were pressured under duress and fear of threat of losing monetary income, health insurance, and job security into violating their conscience and taking an emergency authorized experimental injection in order to keep their employment.

**128.** This was done with an unconstitutional COUNTY policy which was perpetrated and engineered by ALLEGHENY COUNTY leadership (DEFENDANTS) who unreasonably put PLAINTIFFS religious beliefs on trial in order to pretend that they were giving procedural due process in order to receive exemptions pertaining to this unlawful policy.

**129.** DEFENDANTS and other actors through conversations, emails, demands, and requirements, forcefully subjected PLAINTIFFS to COVID-19 testing openly without privacy concerning COVID-19 test.

**130.** Additionally, they were forced to wear masks and were eventually fired from their employment after being dedicated, compliant employees who have acted professionally and

responsibly in their official job capacities, but eventually ended up losing health benefits and full-time employment. This caused additional severe emotional distress, panic attacks, and trauma over financial worries.

**131.** This caused severe emotional distress, anxiety, exacerbate PTSD, insomnia, overall deterioration of health, family relation problems, loss of sleep, chest pains and tightness in the chest area frequently, anguish, extreme public humiliation, and with one PLAINTIFF caused a heart attack.

**132.** This shocked their conscience and in addition to the depths of their souls because PLAINTIFFS never would've expected treatment that COUNTY and DEFENDANTS have given them. PLAINTIFFS were forced to allow the abusive behavior by COUNTY and DEFENDANTS in order to exercise their Freedom of Religion, Freedom of Conscience, and sound medical advice from their doctors.

**133.** PLAINTIFFS were unable to continue with medical treatment that they were receiving currently and were unable to address and remediate new developing physical and medical conditions because of the loss of health insurance and income.

**134.** COUNTY and DEFENDANTS in addition to other actors had a duty of care to not inflict such emotional distress and other abuses against PLAINTIFFS. COUNTY and DEFENDANTS are approximate cause of injury.

### PRAYER OF RELIEF

WHEREFORE, PLAINTIFFS SEEK RELIEF IN THE FORM OF:

A. Compensatory Damages against DEFENDANTS, in the amount of $250,000 each for constitutional violations infringing against each individual PLAINTIFF (see 18 USC 3571 (b)(3) )

B. Compensatory Damages against COUNTY in the amount of $500,000 for each

constitutional violations infringing against each individual PLAINTIFF (18 USC 3571(c)(3))

C. Compensatory Damages against DEFENDANTS for $100,000 for each tort injury against each individual PLAINTIFF.

D. Compensatory damages in the Recovery of the amount of 1.5 years of annual salary for each individual PLAINTIFF according to their most recent pay scale.

E. The right to amend this complaint as warranted by further evidence and fact finding that comes through discovery.

F. Declaratory relief in the form of changing or creation of policies, practices, customs, and actions of ALLEGHENY COUNTY, which protects employees from being retaliated against for exercising Constitutionally protected conduct.

G. To have assistance of counsel in addition to attorneys for limited and full scope in this instant matter.

H. To attempt mediation before adjudicating all matters before summary judgement.

I. Any further relief as the court deems proper.

Dated **16th** of **December**, 2022.

Respectfully submitted,

SHANE CHESHER, Sui Juris
Chesher2305@gmail.com
45 linden St
Mckeery PA 15065

JOANNE M. KING, Sui Juris
Jqueenie1224@yahoo.com
115 RHODES AVE
PITTSBURGH PA 15220

ANDREW NOSBISCH, Sui Juris
Nosbischaj1@gmail.com
4415 Elizabeth St.
West Mifflin, PA 15122

COMPLAINT FOR DAMAGES CIVIL
RIGHTS VIOLATIONS UNDER 42 U.S.C.
SECTION 1983, 1985

JULIA L. WILNER, Sui Juris
mysmootbiecat@yahoo.com
5017 Glenhurst Kd.
Pittsburgh, PA 15207

TKoerbel12@yahoo.com   THOMAS KOERBEL, Sui Juris
Tkoerbel12@yahoo.com
5975 Becky Drive
Pittsburgh PA 15236

CAROL WALSH, Sui Juris
Im4given75@gmail.com
6202 Meade St.
McKeesport PA 15135

DALLAS CHRESTLER, Sui Juris
Dchrestler1111@aol.com
2505 Nt. Troy rd pgh PA 1522U

DEBRA SPIRKO, Sui Juris
debspirko@yahoo.com
56 Ehle Ave
Coraopolis, PA 15108

JEFFREY SIMONETTI, Sui Juris
wjamjeff@verizon.net
708 SEVENTH AVE
Coraopolis, PA 15108

KAREN M. DEPKON, Sui Juris
karendepkon@gmail.com
1801 Lynn Ave
Turtle Creek PA 15145

TRACY MacALLISTER, Sui Juris
Tmacallister5@icloud.com
290 Princeton Ave.
Pittsburgh. PA 15229

COMPLAINT FOR DAMAGES CIVIL
RIGHTS VIOLATIONS UNDER 42 U.S.C.
SECTION 1983, 1985

STACY POOLE, Sui Juris
Scspoole523@msn.com
343 Kenney Ave
Pitcairn, Pa 15140

CANDIS SINES-WESTERBERG, Sui Juris
westsign@comcast.net
634 Dahlia Dr Monroeville PA 15146

# CERTIFICATE OF SERVICE

Case Name: Shane Chesher, et al vs ALLEGHENY COUNTY, PENNSYLVANIA, et al

Case No. _2:22-cv-1822_____

I, the undersigned, HEREBY CERTIFY that on this <u>16</u> <sup>th</sup> **day of DECEMBER in the year 2022**, that true and correct attached documents:

1) PLAINTIFFS' COMPLAINT FOR DAMAGES CIVIL RIGHTS
   VIOLATIONS SECTION 1983, 1985
2) EXHIBITS A-E
3) CERTIFICATE OF SERVICE


   By method(s):

☒ HAND DELIVERY       ☐ US Mail       ☐ FAX       ☐ Electronically


Is Submitted to:

☒ **UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

700 Grant St # 512, Pittsburgh, PA 15219


SHANE CHESHER
Individual Sui Juris
Chesher2305@gmail.com