IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

SHANE CHESHER, )
)
Plaintiff, )          2:22-CV-01822-MJH
)
vs. )
)
ALLEGHENY COUNTY, RICH )
FITZGERALD, LAURA ZASPEL, JAMIE )
REGAN, CHRISTOPHER CAVENDISH, )
NICHOLE NAGLE, ELLEN BUANNIC, )
WILLIAM MCKAIN, STEPHEN )
PILARSKI, PATRICK DOWD,  DOES 1-50,

Defendants,

**MEMORANDUM OPINION**

Pro se Plaintiff, Shane Chesher, and fourteen pro se Plaintiffs, filed the present lawsuit

against Defendants, Allegheny County, Rich Fitzgerald, Laura Zaspel, Jamie Regan, Christopher

Cavendish, Nichole Nagle, Ellen Buannic, William McKain, Stephen Pilarski, Patrick Down,

and John/Jane Does 1-50 on December 16, 2022, related to the County's COVID-19 vaccine

requirements for all Allegheny County Executive Branch employees.  (ECF No. 1).

On January 6, 2023, the Plaintiffs filed an Amended Complaint. (ECF No. 5). On June

23, 2023, the Plaintiffs filed a Second Amended Complaint. On July 12, 2023, Defendants filed a

Motion to Dismiss the Second Amended Complaint, (ECF No. 16), and a Motion to Sever

Parties and Claims. (ECF No. 17). On September 25, 2023, the Court granted Defendants'

Motion to Sever, and ordered each of the pro se Plaintiffs to file their own Complaint under a

related case number. (ECF No.28). Pro Se Plaintiff, Shane Chesher, was permitted to file another

amended complaint. On October 16, 2023, Mr. Chesher filed a Third Amended Complaint. (ECF No. 33). On November 13, 2023, Defendants filed a Partial Motion to Dismiss the Third Amended Complaint, (ECF No. 38), and accompanying brief. (ECF No. 39). On November 29, 2023, Mr. Chesher filed his Response to the Motion to Dismiss the Third Amended Complaint. (ECF No. 40). On December 14, 2024, Defendants filed their Reply brief. (ECF No. 43). On January 8, 2024, Defendants filed a Supplement to Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 45). On January 18, 2024, Plaintiff filed an Opposition to Defendants' Supplement to their Motion to Dismiss. (ECF No. 46).

Presently, before the Court, is Defendants' Partial Motion to Dismiss the Third Amended Complaint. (ECF No. 38). For the reasons stated below, Defendants' Partial Motion to Dismiss will be granted in full.

## I.     Statement of Facts

Throughout the COVID-19 pandemic, Allegheny County enacted policies and practices that were designed to halt the spread of COVID-19. These policies and practices were based on available data and public-health guidance at the time that they were enacted. (ECF No. 38-1). At first, Allegheny County implemented masking and social distancing practices. *Id.* On August 5, 2021, in addition to the masking and social distancing practices, Allegheny County announced that all employees who did not have their COVID-19 vaccination were required to undergo weekly COVID-19 testing. *Id.* On September 29, 2021, Allegheny County announced that it was implementing a COVID-19 vaccine mandate ("vaccine mandate") for all County employees under the Executive branch. *Id.* The vaccine mandate stated that "all Allegheny County employees under the Executive branch must have received their second dose of a two-dose COVID-19 vaccine or a one-dose vaccine" on or before December 1, 2021. *Id.* The mandate

allowed for exceptions as "required by law" and further stated that "employees who fail to submit proof of completed vaccination by December 1, 2021 (without an approved accommodation) will be subject to termination of employment. *Id.*

Pro se Plaintiff, Shane Chesher, was employed as an Allegheny County Park Laborer for approximately 11 years, before his eventual termination. (ECF No. 33, at ¶¶ 26, 28). On or about May 13, 2021, Mr. Chesher received a "Notice Applying CDC Guidance for Vaccinated Persons to Allegheny County Worksites." (*Id.* ¶ 30). The notice communicated to County employees that fully vaccinated employees were no longer required to wear masks or socially distance themselves from others. (*Id.*). On or about August 6, 2021, Mr. Chesher received a memo from "Allegheny County Manager's Office," which communicated that all County employees must either get a COVID-19 vaccination or continue to adhere to the County's masking and social distancing policy, as well as submit to regular COVID-19 testing. (*Id.* ¶ 31). Mr. Chesher alleges that on or about August 27, 2021, he received an unsigned document which indicated that weekly testing of unvaccinated employees would begin on August 30, 2021. (*Id.* ¶ 33).

In response to this communication about weekly testing, Mr. Chesher submitted a religious accommodation request to the County's Human Resources Department, wherein he stated his objection to receiving the vaccination and submitting to COVID-19 testing, citing his personal religious beliefs. (*Id.* ¶ 34). In Mr. Chesher's accommodation request, he stated that it is "[his] religious belief to take care of [his] temple (body) to the best of his knowledge and ability, not anyone else's," and that he has "sole domain over his body." (ECF No. 33-4). Mr. Chesher also alleged that the COVID-19 vaccination was tested using aborted fetal cells, which contradicts his religious beliefs. (ECF No. 33-7). On September 3, 2021, Mr. Chesher spoke on the phone with Human Resource Employees Nicole Nagle, John Duffy, and Melissa Swedish, regarding his

3

religious accommodation request. (ECF No. 33, at ¶ 35). Mr. Chesher alleges that this call lasted less than ten minutes. (*Id.* ¶ 36).

On September 29, 2021, Mr. Chesher received correspondence signed by Laura Zaspel, Director of Human Resources. (*Id.* ¶ 39). The correspondence indicated that, according to the County's records, Mr. Chesher was not vaccinated, and advised that any employees under the Executive Branch of Allegheny County that were not vaccinated by December 1, 2021, would be subject to termination. (*Id.*). On October 13, 2021, Mr. Chesher spoke via telephone to John Mascio, Human Resources Manager for the County, regarding his religious accommodation request. (*Id.* ¶ 63).

On October 29, 2021, Mr. Chesher received a letter, which denied his request for religious accommodation. (*Id.* ¶ 66). This letter indicated that to grant Mr. Chesher's religious accommodation would "impair worker safety, impair the safety of members of the public with whom [Mr. Chesher] interacts, cause co-workers to perform [Mr. Chesher's] share of duties, infringe on other employees' job rights or benefits, and/or reduce overall workplace efficiency, among other factors." (ECF No. 33-9). Mr. Chesher alleges, that as of November 4, 2022, all requests for religious exemptions from 146 Allegheny County employees were denied. (ECF No. 33, at ¶ 79). On November 24, 2021, Mr. Chesher was provided with a *Loudermill* notice, which scheduled a hearing to afford Mr. Chesher an opportunity to respond to the assertions that he violated the mandate. (*Id.* ¶ 82). On December 1, 2021, Mr. Chesher's employment was terminated by the County because he did not comply with the vaccine mandate. (*Id.* ¶ 83). Subsequently, Mr. Chesher filed a grievance challenging his termination; the grievance was denied by a neutral arbitrator on September 9, 2022. (*Id.* ¶ 84). On May 18, 2023, Allegheny County lifted the requirement that employees and new hires must be vaccinated. (ECF No. 38-3).

## II.    Relevant Legal Standards
### A.  Pro Se Pleadings

As an initial matter, while courts have an obligation to read a pro se litigant's pleading liberally, a pro se plaintiff is not excused from complying with rules of procedural and substantive law.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Although courts are directed to "liberally construe pro se filings," the plaintiff "is not exempt from procedural rules or the consequences of failing to comply with them." *Jones v. Sec'y Pa. Dep't of Corr.*, 589 F. App'x 591, 593 (3d Cir. 2014). "Courts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1217 (3d ed. 2019). Put simply, "judging the sufficiency of a pleading is a context-dependent exercise." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). The circumstances surrounding the particular pleading, including the nature of the action, the sort of relief being sought, the availability of information, and other practical considerations must guide the inquiry into whether the litigant's statement of his claim qualifies as "short and plain." *See* Wright & Miller, *supra*, § 1217.

Furthermore, a "statement of a claim may be 'plain' even if it does not include every name, date, and location of the incidents at issue." *Garrett*, 938 F.3d 69 at 93 (citations omitted). "Missing details or superfluous material do not necessarily render a complaint unintelligible. Indeed, even if it is vague, repetitive, or contains extraneous information, a pro se complaint's language will ordinarily be 'plain' if it presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 93-94 (citations omitted).

### B. Fed. R. Civ. P. 12(b)(6)

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d

902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether

the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to

establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless

discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but

may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*,

902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6)

motion, a court must consider only the complaint, exhibits attached to the complaint, matters of

public record, as well as undisputedly authentic documents if the complainant's claims are based

upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless

such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox*

*Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further,

amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair

prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is

futile "where an amended complaint 'would fail to state a claim upon which relief could be

granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015)

(quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir.

2010)).

III.    **Discussion**

   A.  **Count XII: Home Rule Charter**

Mr. Chesher alleges that Defendants violated Allegheny County's Home Rule Charter ("HRC") by implementing the vaccine mandate. (ECF No. 33, at ¶¶ 156-158). In the Motion to Dismiss, the defense argues that such a claim is not a legally cognizable cause of action; and, even if it is, Mr. Chesher failed to plead a proper claim. (ECF No. 39, at 22). Mr. Chesher argues that Defendants did not have authority under the HRC to implement the vaccine mandate, and that the power to implement such a mandate is only vested in the County Council. (ECF No. 33, at ¶¶ 157-158).

Allegheny County became a "Home Rule" government effective January 1, 2000, and is subject to the HRC in its everyday operations. The HRC is required to be construed broadly in favor of the County's government. HRC §1.13-1304. The HRC required the County Council to promulgate an "Administrative Code" ("AC Code") that set forth a "complete plan of organization, departmental structure and operation for the County government." HRC §1.4-406. Together, the AC Code and HRC establish laws for the operation of Allegheny County government.

The HRC provides that the executive and administrative power of the County is vested in the Executive Branch. The Executive Branch consists of the Chief Executive Officer, the County Manager, the Law Department, and such other departments and agencies that are established under the AC Code. HRC §1.5-502(e). The County Manager, who serves under the County Executive, is vested with the power to prepare, and administer a personnel system. HRC §1.6-602(d). The personnel system includes rules and regulations governing topics such as: classification and pay plans, examinations, force reduction, removals, discipline, working conditions, provisional and exempt appointments, employee training and orientation, and grievances and civil service systems. AC Code Article IX §1.9-902.

8

"The County Executive, through the County Manager and the Human Resources Division, shall be accountable for the development of personnel policies, procedures, and regulations for the career service of the County[.]" AC Code §5-10001.03. These procedures include "establishing a high standard of integrity, conduct, and concern for the public interest." AC Code §5-10001.03A. The duties and responsibilities of the personnel system are distributed among the County Executive, County Manager, and Human Resources Director. AC Code §5-1001.04. The County Manager, acting under the County Executive, shall oversee the personnel system, establish overall personnel policies, and give final approval of personnel rules and regulations developed by the Human Resources Director. AC Code §5-1001.04B(1)-(3). The Human Resources Director is responsible for "preparing and promulgating personnel policies governing all employees serving under the jurisdiction of the County Officers." AC Code §5-1009.01A. These policies are subject to the approval of the County Manager. *Id.*

Mr. Chesher argues that Mr. Fitzgerald overstepped his authority under the HRC when he implemented the vaccine mandate. In support of his argument, Mr. Chesher cites to a provision in the HRC that establishes the power of the Legislative Branch of Allegheny County. The provision states, "The legislative power of the County shall be vested in the County Council," HRC §1.4-401, and that the County Council holds the power to "adopt, amend, and repeal ordinances, resolutions, and motions." HRC §1.4-402. Mr. Chesher argues that this provision also encompasses Allegheny County employees' working conditions; and thus, Mr. Fitzgerald could not implement the mandate without approval from the County Council. However, review of the HRC and the AC Code, supports that Mr. Fitzgerald had the Executive Branch authority to implement and enforce the vaccine mandate against Allegheny County employees.

The language of the HRC, as supplemented by the AC Code, empowers the County Executive, through the County Manager and Human Resources Division, to develop personnel policies, procedures, and regulations for the career service of the County. AC Code § 5-10001.03. AC Code Article IX § 1.9-902 establishes a personnel system, which includes rules and regulations regarding removal, discipline, and working conditions. The personnel system identifies the general types of employment decisions, pertaining to employees of the Executive Branch of Allegheny County, over which the County Executive has control. *Id.* The vaccine mandate fits neatly within the confines of the types of administrative power conferred upon the County Executive by the HRC and AC Code. As such, Mr. Chesher's argument that, according to HRC §1.4-402, the County Council was required to approve the vaccine mandate, fails.

Next, Mr. Chesher alleges that the vaccine mandate, for which he is seeking damages arose "from the announcement of Defendant County Executive Rich Fitzgerald that all county employees must be vaccinated for COVID-19." *See* (ECF No. 33 ¶ 2).  Mr. Fitzgerald announced the vaccine mandate on September 29, 2021, and on the same day, Ms. Zaspel, the Director of Human Resources, communicated the mandate to unvaccinated Allegheny County employees of the Executive Branch. (ECF No. 38-2); (ECF No. 33-6).  Mr. Chesher further argues that Mr. Fitzgerald improperly implemented the vaccine mandate, because it was communicated to the employees of Allegheny County by Ms. Zaspel. The HRC and AC Code allow for the Human Resources Department to "prepar[e] and promulgat[e] personnel policies governing all employees serving under the jurisdiction of the County Officers." AC Code §5-1009.01A. Accordingly, Ms. Zaspel acted within her authority as the Human Resources Director in her communications about the vaccine mandate to Allegheny County employees within the Executive Branch. Thus, Mr. Chesher's argument about improper implementation fails.

Mr. Chesher further argues that Ms. Zaspel was required to obtain prior approval from the County Manager before she enforced the mandate. However, once Mr. Fitzgerald, the County Executive, announced the September 29, 2021 vaccine mandate, according to the HRC, Ms. Zaspel, as Human Resources Director, acting under Mr. Fitzgerald, was reasonably authorized to implement the same. *See* AC Code §5-1001.04B(1)-(3). The County Manager's approval of the vaccine mandate is inherent within the vaccine mandate announcement, as the County Executive ultimately implemented said mandate, and the County Manager follows the instruction of the County Executive. By issuing the letter describing the vaccine mandate, Ms. Zaspel was just performing within her job classification and authority.

Defendants' Motion to Dismiss as to Mr. Chesher's allegations that Defendants violated the HRC by adopting the vaccine mandate and that Ms. Zaspel erred in implementing said mandate, will be granted. As further amendment would be futile, Mr. Chesher will not be granted leave to amend this claim.

### B.  § 1983 Claims – Individual Defendants' Liability

Mr. Chesher brings various § 1983 claims against Allegheny County and various county employees. Specifically, Mr. Chesher names Rich Fitzgerald, Laura Zaspel, Christopher Cavendish, Nichole Nagle, Ellen Buannic, Jamie Regan, William D. McKain, Stephen Pilarski, Patrick Dowd, and John/Jane Does 1-50. ("Individual Defendants"). (ECF No. 33, at ¶¶ 23-24). Defendants argue that any § 1983 claims brought against the Individual Defendants must be dismissed, because Mr. Chesher fails to show that any were personally involved with his termination. Mr. Chesher argues that every Individual Defendant was personally involved with his termination and the enforcement of the vaccine mandate. (ECF No. 40, at 5).

11

Claims for money damages for violation of constitutional rights cannot be based upon vicarious liability or respondeat superior; "to state such a cause of action against a government official under Section 1983, the plaintiff must allege that the individual defendant was personally involved in the alleged wrongs. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). Liability for claims asserted under § 1983 requires personal involvement in the alleged wrongs. *Hatfield v. Berube,* 714 F. App'x 99, 102 (3d Cir. 2017). Since vicarious liability is inapplicable to § 1983 claims, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff must aver facts to show a defendant's personal involvement in the alleged misconduct. *Id.* Personal involvement requires particular "allegations of personal direction or of actual knowledge and acquiescence." *Id.*

Mr. Chesher fails to sufficiently plead how Rich Fitzgerald, Christopher Cavendish, Nichole Nagle, Ellen Buannic, Jamie Regan, William D. McKain, Stephen Pilarski, Patrick Dowd, and John/Jane Does 1-50 were personally involved in any of the alleged constitutional violations that he asserts under § 1983. Simply stating that all these Defendants were members of the County's Executive Branch or Human Resources Department does not sufficiently assert personal involvement in Mr. Chesher's termination or that they had actual knowledge or acquiescence in his specific situation and the application of the vaccine mandate against him. As related to Rich Fitzgerald, the only alleged actions to connect Rich Fitzgerald to Mr. Chesher's termination are that Mr. Fitzgerald was the County Executive when the mandate was announced and implemented. Mr. Chesher does not plead any facts that show how Mr. Fitzgerald had any personal involvement, actual knowledge, or acquiescence in Mr. Chesher's specific circumstances and eventual termination.

As to Laura Zaspel, Mr. Chesher attached letters that she sent to him, communicating the announcement of the vaccine mandate and the denial of his requested religious exception. (ECF No. 33-8). As head of the Human Resources Department, she also sent other personnel-related correspondence to Mr. Chesher. At this stage, such is enough to establish Ms. Zaspel's personal involvement for Mr. Chesher's alleged § 1983 claims.

Defendants' Motion to Dismiss all § 1983 claims against Rich Fitzgerald, Christopher Cavendish, Nichole Nagle, Ellen Buannic, Jamie Regan, William D. McKain, Stephen Pilarski, Patrick Dowd, and John/Jane Does 1-50, will be granted. Defendant's Motion to dismiss the § 1983 claims against Ms. Zaspel will be denied. As the Court cannot say that amendment would be inequitable or futile, Mr. Chesher will be granted leave to amend.[1]

### C. Count I: § 1983 – First Amendment Free Exercise Claim

Mr. Chesher brings a First Amendment Free Exercise Clause claim against Defendants, alleging that Defendants violated his free exercise rights through the implementation and application of the vaccine mandate. (ECF No. 33, at ¶ 91). Mr. Chesher argues that the manner by which Defendants implemented the vaccine mandate was neither neutral nor generally applicable; and thus, the actions are subject to strict scrutiny. (ECF No. 33, at ¶¶ 89-101); (ECF No. 40, at 10). Mr. Chesher concedes that he is not challenging the constitutionality of vaccine mandates. (ECF No. 40, at 6). Defendants argue that Mr. Chesher fails to sufficiently plead a free exercise claim, and even if he does, the vaccine mandate is subject to rational basis review, and that the vaccine mandate is validated under such review. (ECF No. 39, at 7).

Defendants argue that there is no established constitutional right to a religious exemption from a vaccine mandate and cite various federal cases supporting their argument. *Spivack v. City*

---

[1] Hereafter, for the § 1983 claim discussions within this opinion, when reference is made to "Defendants," the parties at issue will only be Allegheny County and Ms. Zaspel.

*of Phila.*, 649 F.Supp.3d 45, 54-60 (E.D. Pa. 2023) (rejecting a Free Exercise challenge to COVID-19 vaccination mandate that permitted religious exemptions at first, but then revoked the availability of religious exemptions to the mandate); *Nikolao v. Lyon,* 875 F.3d 310, 316 (6th Cir. 2017) (stating that there is no constitutional right to a vaccine exemption for religious beliefs); *Philips v. City of New York,* 775 F.3d 538, 543 (2d Cir. 2015) (rejecting free exercise challenge to a compulsory school vaccination law that did not permit religious exemptions and holding that mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause); *Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp 3d 1079, 1084 (S.D. Cal. 2016) (upholding California law that removed religious exemption to vaccination mandate, stating that "it is clear that the Constitution does not require the provision of a religious exemption to vaccination requirements"). Mr. Chesher argues that the factual differences between the cases cited by the Defendants are distinguishable from the facts of the present case, such that the holdings in said cited cases do not apply to the case at hand. (ECF No. 40, at 7).  Notwithstanding the factual distinctions among these cases, the general holding, that failure to provide for religious exemptions to vaccine mandates is Constitutional, remains firmly established. Thus, Allegheny County was not required to provide religious exemptions to the vaccine mandate under the First Amendment.

The Free Exercise Clause of the First Amendment is applied to the States through the Fourteenth Amendment and provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const., amend. I. The free exercise of religion includes "the right to believe and profess whatever religious doctrine one desires," as well as the right to act and abstain from acts for religious reasons. *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990). However, not all laws that burden this right violate the

Constitution. *Id.* at 878. Such laws also do not inevitably trigger strict scrutiny. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531 (1993). Only a law that is not neutral or generally applicable must pass strict scrutiny; and thus, "must be justified by a compelling interest and must be narrowly tailored to advance that interest." *Id.* A neutral law of general applicability is subject only to rational basis review, even if it burdens religious practice. *Id.* "Neutrality and general applicability are interrelated." *Id.* Accordingly, satisfying the former requirement likely means that the latter has also been satisfied. *Id.*

The government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton,* 141 S. Ct. at 1876. At a minimum, the neutrality principle requires that, on its face, a law or policy may not single out religious exercise by "refer[ring] to a religious practice without a secular meaning discernable from the language or context." *Lukumi,* 508 U.S. at 533-34, 113 S. Ct. 2217. A law is "neutral if it does not target religiously motivated conduct either on its face or as applied in practice." *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 241 (3d Cir. 2008) (quoting *Blackhawk v. Pennsylvania*, 381 F.3d 202 (3d Cir. 2004)).

As regards general applicability, a law is not "generally applicable" (1) if it prohibits religious conduct but permits comparable secular conduct; or (2) if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Spivack*, 649 F.Supp.3d, at 57 (citing *Fulton v. City of Phila.*, 593 U.S. 522, 534 (2021) (internal quotation marks and alterations omitted)).

In assessing general applicability, the Court must first consider, whether the vaccine mandate regulates "comparable conduct." "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies

the regulation at issue." *Spivack*, 649 F.Supp.3d, at 57 (quoting *Tandon v. Newsom,* 141 S. Ct. 1294, 1296 (2021)). "Comparability is concerned with the risks various activities pose." *Id.* A law or policy is not generally applicable if it burdens religious conduct but does not burden secular conduct that undermines the asserted government interest in the same manner. *Id.*  (citing *Fulton*, at 533-34).

Next, the Court must consider whether the possibility of exceptions to the vaccine mandate, and Allegheny County's consideration of exemption requests, including religious exemption requests, provides a mechanism for individualized exemptions. The Third Circuit has held that rules that permit "individualized, discretionary exemptions" may not be generally applicable. *Spivack,* 649 F. Supp.3d, at 58 (citing *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004)). The Second Circuit has clarified this principle, stating, "[t]he 'mere existence of an exemption procedure,' absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable and subject to strict scrutiny." *Id.* at (citing *We the Patriots USA, Inc., v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021) (internal quotations omitted). Courts have recognized that "it takes some degree of individualized inquiry to determine whether a person is eligible for even a strictly defined exemption." *Id.* at 59 (citing *Axson-Flynn v. Johnson,* 356 F.3d 1277, 1298 (10th Cir. 2004)).

As regards neutrality, Allegheny County's vaccine mandate required that *all* County employees under the Executive Branch be vaccinated and only allowed for exceptions required by law. Individual employees' religious beliefs were not considered in implementing the mandate. Mr. Chesher does not plead any facts to establish that the mandate was implemented

because of his religious beliefs, or because of the religious beliefs of any others. Thus, the mandate was neutral.

As to generally applicability, Mr. Chesher does not plead facts asserting that employees were exempt from the vaccine mandate due to secular reasons, nor does he plead facts that accommodations were provided to other Allegheny County employees for secular reasons. Therefore, Mr. Chesher does not allege facts to establish that the vaccine mandate regulates his religious conduct while allowing for comparable secular conduct.

Further, Allegheny County's vaccine mandate allows only for "such exceptions required by law." Allegheny County did not create a formal system of discretionary exceptions to be determined by any specific individual. Mr. Chesher does not plead any facts in his Third Amended Complaint that suggest that the County was making individual determinations whether to grant religious exceptions to the mandate. In fact, Mr. Chesher pleads that 146 religious exemption requests to the vaccine mandate were made, but not one of them was granted. (ECF No. 33, at ¶ 79). Therefore, the Complaint allegations support that the mandate was generally applicable.

As the mandate was neutral and generally applicable, it is subject to rational basis review, but not, as Mr. Chesher argues, strict scrutiny. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531 (1993). Rational basis review requires "merely that the [challenged] action be rationally related to a legitimate government objective." *Tenafly Eruv Ass'n v. Tenafly*, 309 F.3d 144, 165 n. 24 (3d Cir. 2002). Rational basis review is "very deferential," *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018), and follows a "paradigm of judicial restraint." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "The general rule is that legislation . . . will be sustained if [it is] rationally related to a legitimate state interest." *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citations omitted). "Any reasonable conceivable state of facts" will suffice, and there is a "strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

Allegheny County implemented the vaccine mandate, relying upon information and guidance provided by the CDC, Pennsylvania Department of Health, and the Allegheny County Health Department. (ECF No. 38-2). According to the information available to Allegheny County at the time, the "best way to slow the spread of COVID-19 and to prevent infection by the Delta variant or other variants [was] to be vaccinated." *Id.* Thus, the mandate was rationally related to a legitimate government objective, and it survives rational basis review.

Accordingly, Mr. Chesher does not plead facts sufficient to establish a free exercise claim under the First Amendment in relation to Allegheny County's vaccine mandate and its implementation. Therefore, Defendants' Motion to Dismiss Mr. Chesher's Free Exercise Clause claim, at Count I of the Third Amended Complaint, will be granted. As the Court cannot say that amendment would be inequitable or futile, Mr. Chesher will be granted leave to amend this claim.

### D. Count II: § 1983 – 14th Amendment Equal Protection Clause Claim

Mr. Chesher brings a claim against Defendants, alleging that his 14th Amendment Equal Protection Rights were violated, because the vaccine mandate discriminated against him for holding his religious beliefs. Defendants argue that Mr. Chesher fails to plead that he was treated differently from other similarly situated Allegheny County employees; and therefore, his Equal Protection Clause claim cannot be successful. (ECF No. 39, at 13).

The 14th Amendment states, "no State. . . shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Third Circuit and the

Supreme Court have held, "[t]his is not a command that all persons shall be treated alike, but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Children's Health Defense, Inc. v. Rutgers*, 93 F.4th 66, 83 (3d Cir. 2024) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To bring a successful equal protection claim, plaintiffs "must demonstrate that they received different treatment from that received by other individuals similarly situated." *Children's Health Defense, Inc.*, 93 F.4th 66, at 84 (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (quotation omitted)). At the pleading stage, that means plaintiffs must adequately allege that they are "alike 'in all relevant respects,'" *Id.* (citing *Harvard v. Cesnalis,* 973 F.3d 190, 205 (3d Cir. 2020), and must offer more than conclusory assertions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Mr. Chesher fails to plead how he was treated differently from similarly situated employees. Mr. Chesher only provides conclusory statements, alleging that the mandate discriminates against "unvaccinated people who need to exercise their fundamental rights to refuse experimental vaccines that conflict with their sincerely held religious beliefs." (ECF No. 33, at ¶ 113). None of the 146 employees who requested religious exceptions were granted their requests. Mr. Chesher does not allege any facts to compare himself to other unvaccinated individuals who were treated more favorably than himself. Mr. Chesher relies on conclusory allegations, claiming that the mandate discriminates against individuals refusing to adhere to the mandate for religious reasons. Such allegations are not sufficient.

Thus, Mr. Chesher fails to plead facts sufficient to establish a 14th Amendment Equal Protection Clause claim. Defendants' Motion to Dismiss Count II of the Third Amended

Complaint, will be granted. As the Court cannot say that amendment would be inequitable or futile, Mr. Chesher will be granted leave to amend this claim.

### E.  Count III: §1983 – 14th Amendment Procedural Due Process Claim

Mr. Chesher brings claims against Defendants, alleging that the Defendants violated his 14th Amendment procedural due process rights, because Defendants failed to provide him with notice, an opportunity to be heard, and a fair, unbiased decision maker, thus violating his procedural due process rights. (ECF No. 33, at ¶¶ 123-128). Mr. Chesher further argues that the manner by which the vaccine mandate was implemented deprived him of his procedural due process rights, because it violated the HRC. (ECF No. 40, at 12). Defendants argue that Mr. Chesher fails to plead facts sufficient to support a 14th Amendment claim for violation of his procedural due process rights, because Mr. Chesher was provided with proper notice, a chance to be heard, and an unbiased decision maker. (ECF No. 39, at 15). Defendants further argue that the vaccine mandate was implemented in a manner consistent with the HRC.

The Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of life, liberty, or a property interest. *Washington v. Lehigh Cty. Dist. Attorney's Off.*, 541 F. Supp 3d 536, 545(E.D. Pa. 2021). To establish a claim for a violation of procedural due process, a plaintiff "must establish both a deprivation of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property" and the absence of procedures that "provide due process of law." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 822 (3d Cir. 2020). "[I]n cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . .those procedures satisfy due

process requirements." *Leneny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999) (quoting *Dykes v. Southeastern Pa. Trans. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995)).

First, the Court will address Mr. Chesher's claim that his due process rights were deprived based upon the manner by which the vaccine mandate was established by Defendants. As discussed above, the vaccine mandate was properly adopted and implemented according to the HRC. Therefore, Mr. Chesher's claim, that his procedural due process rights were violated because of the manner in which the vaccine mandate was adopted, fails.

Next, the Court must determine whether Mr. Chesher has properly pled that an interest, protected by the Fourteenth Amendment, was violated by the adoption of the vaccine mandate. Within Count III, Mr. Chesher does not plead facts or identify the specific protected interest at issue. Mr. Chesher simply alleges, in a conclusory fashion, that the vaccine mandate violated his 14th Amendment procedural due process rights.

Further, even if Mr. Chesher had properly pled facts to allege that Defendants violated a protected interest under the 14th Amendment, he was provided proper due process of the law. Mr. Chesher was provided notice of the vaccine mandate through Mr. Fitzgerald's press release and Laura Zaspel's September 29, 2021 letter. (ECF No. 38-2); (ECF No. 33-6). Mr. Chesher submitted a religious accommodation request to the mandate, which was denied after he spoke with Allegheny County Human Resource representatives on two separate occasions. Mr. Chesher was also provided with a *Loudermill* hearing, wherein he could explain his reasons for violating the mandate and voice his opposition. After his termination on December 1, 2021, Mr. Chesher submitted a grievance, as permitted by his union's collective bargaining agreement. The grievance was heard and denied by a neutral arbitrator, on September 9, 2021. These events, as pleaded by Mr. Chesher, establish that he was provided proper notice of the vaccine mandate,

given a hearing, and he participated in a grievance process. Thus, Mr. Chesher was provided proper procedural due process.

Mr. Chesher fails to plead facts sufficient to establish that Defendants violated his 14th Amendment procedural due process rights. Defendants' Motion to Dismiss Mr. Chesher's 14th Amendment procedural due process claims at Count III of the Third Amended Complaint, will be granted. As further amendment would be futile, Mr. Chesher will not be granted leave to amend this claim.

### F.  Count IV: § 1983 – 14th Amendment Substantive Due Process Claims

Mr. Chesher brings 14th Amendment substantive due process claims against Defendants, alleging that they violated his fundamental right to be free from "forcible injection" and "experimental medicine," based upon his religious beliefs, and that any infringement of that right is subject to strict scrutiny. (ECF No. 33, at ¶¶ 131, 133). Defendants argue that Mr. Chesher fails to plead a substantive due process claim, because there is no fundamental right to refuse vaccination; and thus, the vaccine mandate is subject to and survives rational basis review. (ECF No. 39, at 18).

The 14th Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law. . . ." U.S. Const. amend XIV. "Substantive due process is a 'component of the [14th Amendment] that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Wrench Transp. Sys. Inc. v. Bradley*, 340 F. App'x 812, 815 (3d Cir. 2009) (internal quotations omitted) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). "Substantive due process refers to and protects federal rights." *Ransom v. Marazzo*, 848 F.2d 398, 411 (3d Cir. 1988). The analysis of any substantive due process claim "must begin with a careful description of the asserted

right[.] *Reno v. Flores*, 507 U.S. 292, 302 (1993). To be "protected" the asserted right must be "fundamental," that is, arising from the Constitution itself. *Id.*

Where an alleged government deprivation infringes on a fundamental right, courts apply strict scrutiny. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). If the infringed rights are neither fundamental nor based on a suspect classification, rational basis review applies. *Id.* at 728. Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

Here, Mr. Chesher argues that Defendants violated his 14th Amendment substantive due process rights by adopting and subjecting him to the vaccine mandate. He seemingly claims a fundamental right to be free from forcible injection of experimental medicine. The Third Circuit has held that vaccine mandates are not unconstitutional, and that there is no fundamental right to refuse vaccination. *Children's Health Defense, Inc. v. Rutgers*, 93 F.4th 66, 78 (3d Cir. 2024). In making this determination, the Third Circuit pointed to a long history of cases which support their holding. *See Id.* n.25. "A 'fundamental right' must be either enumerated in the Bill or Rights or "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Id.* (citing *Washington*, 521 U.S. 702, at 720-721). Mr. Chesher does not offer any historical examples to establish a fundamental right to be free from a vaccination mandate in public employment. Since no fundamental right to refuse vaccination exists, the Court must apply rational basis review to the vaccine mandate in order to determine whether Mr. Chesher's 14th Amendment substantive due process rights were violated.

Under rational basis review, Defendants need only "set forth a satisfactory, rational explanation" for its vaccine mandate. *Nazareth Hosp. v. Sec'y U.S. Dep't of Health & Hum.*

23

*Servs.,* 747 F.3d 172, 180 (3d Cir. 2014). Controlling the spread of COVID-19 is "unquestionably a compelling interest" *Children's Health Defense, Inc.*, 93 4th 66, at 81 (citing *Roman Cath. Diocese of Brooklyn*, 592 U.S. 14, 18 (2020)). After considering guidance by the CDC, Pennsylvania Department of Health, and the Allegheny County Health Department, Allegheny County implemented the vaccine mandate, stating that the "best way to slow the spread of COVID-19 and to prevent infection by the Delta variant or other variants [was] to be vaccinated." (ECF No. 38-2). Adherence to the directives and guidance from federal, state, and county health agencies, is a rational explanation for implementing the vaccine mandate.

As such, Defendants' Motion to Dismiss Mr. Chesher's 14th Amendment substantive due process claims, at Count IV of the Third Amended Complaint, will be granted. As the Court cannot say that amendment would be inequitable or futile, Mr. Chesher will be granted leave to amend this claim.

### G.  Count X: Intentional and Negligent Infliction of Emotional Distress Claims

Mr. Chesher brings a claim against Defendants for Intentional Infliction of Emotional Distress ("IIED"), alleging that he suffered significant emotional distress and trauma because of the denial of his religious exemption request. (ECF No. 33, at ¶¶ 142-145). Defendants argue that they are immune from liability for this claim. (ECF No. 39, at 21). In Mr. Chesher's Response to Defendants' Partial Motion to Dismiss, he alleges that he brought, and sufficiently pled, a Negligent Infliction of Emotional Distress ("NIED") claim. (ECF No. 40, at 14). Defendants argue that Mr. Chesher did not plead an NIED claim within the complaint; therefore, he cannot bring the claim within his Response. Considering Mr. Chesher is pro se, the Court will analyze whether Mr. Chesher pled sufficient facts to establish either an IIED and/or NIED claim in his Third Amended Complaint.

Allegheny County is a political subdivision of the Commonwealth of Pennsylvania and is entitled to the protections of the Political Subdivision Tort Claims Act ("Tort Claims Act"). 42 Pa. C.S.A. §§ 8541-8564. Under the Tort Claims Act, Allegheny County is generally immune from suit involving torts. The County may be held liable only for negligent acts, and those acts must fit within the following parameters:

1. There exists either a statutory or common law cause of action that would hold the County liable but for the Tort Claims Act. 42 Pa. C.S.A. § 8542(a)(1)

2. A County employee's action or inaction caused the plaintiff's harm. 42 Pa. C.S.A. §8542 (a)(2); and

3. This action/inaction falls within one of nine categories. 42 Pa. C.S.A. § 8542(a)(2) and (b)(1-9).

The Tort Claims Act must be narrowly construed in favor of insulating the County from liability. *Mascaro v. Youth Study Center,* 523 A.2d 1118 (Pa. 1987). Allegheny County's employees are afforded the same limitations on liability as Allegheny County. 42 Pa. C.S.A. § 8545. Here, Mr. Chesher does not plead any facts to clear the Tort Claims Act hurdle to defeat the immunity that protects both Allegheny County and its employees from either an IIED or NIED claim. The IIED claim concerns an intentional tort, for which immunity applies. And, for the NIED claim the alleged actions do not fall into any of the nine enumerated exception categories. As such, Allegheny County and the Individual County Defendants are immune from both an IIED and NIED claim.

Further, even if Allegheny County and the Individual County Defendants were not protected from liability by the Torts Claim Act, Mr. Chesher does not plead sufficient facts to establish either an IIED or NIED claim. To establish an IIED claim, a plaintiff must establish that the defendant participated in conduct that was "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). Additionally, IIED requires a plaintiff to allege a physical injury. *See Kazatsky v. King David Memorial Park*, 527 A.2d 988 (Pa. 1987). A plaintiff must also establish that the alleged emotional distress resulted in actual objectively recorded physical harm, typically displayed by pleading facts that they were treated medically for the alleged emotional distress. *Britt v. Chesnut Hill College,* 632 A.2d 557, 562 (Pa. Super. 1993).

As to an IIED claim, Mr. Chesher does not plead any facts to support that any emotional distress, caused by having to comply with the vaccine mandate, resulted in any physical injury substantiated by any medical records. Furthermore, Mr. Chesher does not sufficiently plead that, required compliance with the mandate in order to remain employed by Allegheny County, constituted conduct that was "so outrageous" to go "beyond all possible bounds of decency." Thus, Mr. Chesher does not plead facts sufficient to establish an IIED claim.

To establish a claim for NIED, under Pennsylvania law, a plaintiff must first plausibly plead any of the following situations: "(1) the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger and reasonably feared impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Runner v. C.R. Bard*, 108 F. Supp. 3d 261, 272 (E.D. Pa. 2015). As to an NIED claim, Mr. Chesher does not plead any facts to establish any of the four required circumstances to establish an NIED claim. As such, Mr. Chesher does not plead facts sufficient to establish a NIED claim.

Defendants' Motion to Dismiss, the IIED and/or NIED claims brought at Count X of the Third Amended Complaint, will be granted. As amendment would be futile, due to immunity, Mr. Chesher will not be granted leave to amend these claims.

### H.  Count XI: Title VII Claims

Mr. Chesher brings Title VII religious discrimination claims against Defendants, alleging that Defendants failed to reasonably accommodate his religious beliefs. (ECF No. 33, at ¶¶ 146-155). Defendants argue that Mr. Chesher does not specify which Defendants he is bringing Title VII claims against. (ECF No. 39, at 22).  Defendants also argue that individual employee liability does not exist under Title VII. *Id.*

The Third Circuit is steadfast in holding that no Title VII liability exists for individual employees. "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir. 1996); *See also Newsome v. Admin. Office of the Courts of the State of New Jersey,* 51 Fed.Appx. 76, 79 n.1 (3d Cir. 2002) ("it is settled that Title VII does not provide for individual liability"). As such, Defendants' Motion to Dismiss Mr. Chesher's Title VII claims, against the Individual Defendants, at Count XI of the Third Amended Complaint, will be granted. As further amendment would be futile, Mr. Chesher will not be granted leave to amend these claims. Mr. Chesher's Title VII claim against Allegheny County, at Count XI, will remain.

### I.  Punitive Damages

Mr. Chesher seeks punitive damages. Defendants argue that Mr. Chesher is unable to seek punitive damages from Allegheny County, because such damages are not recoverable against municipalities. (ECF No. 39, at 25). Mr. Chesher argues that punitive damages from Allegheny County are available to him. (ECF No. 40, at 21).

Punitive damages are not available to plaintiffs bringing Title VII claims against the government, government agency, or political subdivision. 42 U.S.C.A § 1981a(b)(1). Moreover, punitive damages are also not available against municipalities for claims brought under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981).

Thus, Defendants' Partial Motion to Dismiss, as to Mr. Chesher's claims for punitive damages against Allegheny County, will be dismissed with prejudice.

### J.   Declaratory Relief

Pursuant to 28 U.S.C. § 2201, Mr. Chesher seeks declaratory judgment, to confirm that the vaccine mandate was unconstitutional; and therefore, that he be reinstated as an Allegheny County employee. (ECF No. 33, at ¶ 19). Defendants argue that all declaratory relief sought by Mr. Chesher should be dismissed as moot under Fed. R. Civ. P. 12(b)(1), because there is no actual case or controversy. (ECF No. 39, at 25). Mr. Chesher argues that a substantial controversy exits between the parties, such that declaratory judgment is warranted. (ECF No. 40, at 21).

The Declaratory Judgment Act "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co*., 344 U.S. 237, 241 (1952)). "Declaratory judgments are often forwardlooking, but they are 'limited to cases and controversies in the constitutional sense.'" *Sherwin-Williams Company v. County of Delaware, Pennsylvania*, 968 F.3d 264, 269 (3d Cir. 26 2020) (citing *Wyatt, Virgin Islands, Inc. v. Gov't of V.I.*, 385 F.3d 801, 805 (3d Cir. 2004)) (citations omitted). Courts may review only "concrete legal issues, presented in actual cases, not abstractions.... This is as true of declaratory judgments as any other field." *Golden v. Zwickler*, 394 U.S. 103, 108, (1969) (quoting *United Pub. Workers of Am. (C.I.O.) v.*

*Mitchell*, 330 U.S. 75, 89, 67 (1947)) (internal quotation marks omitted). Even though there is no exact definition of what constitutes a case or controversy, "the facts alleged, under all circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, (2007) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, the vaccine mandate Mr. Chesher challenges was terminated by Allegheny County, effective May 18, 2023. (ECF No. 38-3). As such, the vaccine mandate no longer affects any person's right to seek employment with Allegheny County. Further, Mr. Chesher cannot establish a likelihood of future harm. There is no longer a forward-looking remedy to be obtained, because Mr. Chesher is no longer an employee of Allegheny County. The Declaratory Judgement Act addresses ongoing or potential controversies and provides a remedy when there exists a real and immediate threat of injury. *Blakeney v. Marsico,* 340 Fed.Appx. 778, 780 (3d Cir. 2009). Presently, Mr. Chesher faces no threat of future injury from the vaccine mandate, because it is no longer in place. Additionally, Mr. Chesher is no longer an Allegheny County employee, so even if the vaccine mandate was reinstated, it would not affect him.

Thus, Defendants' Motion to Dismiss Mr. Chesher's requests for declaratory judgment, will be granted. As further amendment would be futile, Mr. Chesher's requests for declaratory judgment will be dismissed with prejudice.

## IV.    Conclusion

For the reasons stated above, Defendants' Partial Motion to Dismiss will be granted in full. Counts I, II, and IV of the Third Amended Complaint, will be dismissed, with leave to amend. Counts III, X, and XII, will be dismissed, without leave to amend. Count XI, as related to the

Individual Defendants, will be granted, without leave to amend. Mr. Chesher's requests for punitive damages against Allegheny County, will be dismissed, without leave to amend. Mr. Chesher's requests for declaratory relief will be dismissed, without leave to amend. As Defendants did not file a Motion to Dismiss the Title VII claim, at Count XI, against Allegheny County, said claim will remain.[2]

Mr. Chesher may file an amended complaint on or before May 30, 2024. If Mr. Chesher does not file an amended complaint, then Defendant, Allegheny County, must file a Response to the remaining Count XI Title VII claim against Allegheny County on or before June 13, 2024.

DATE: _5/16/2024___

Marilyn J. Horan
United States District Judge

---

[2] For reference, Counts V, VI, VII, VIII, and IX were withdrawn by Mr. Chesher.